UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

JONATHAN JONES,

      Plaintiff,

        v.

CITY OF CINCINNATI, *et al.*,

      Defendants.

Case No. 1:22-cv-530

JUDGE DOUGLAS R. COLE
Magistrate Judge Litkovitz

## OPINION AND ORDER

Jonathan Jones claims that the City of Cincinnati discriminated against him based on race when it refused to hire him as a Cincinnati police officer. He sued the city and three of its employees, asserting violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* (Title VII); the Civil Rights Act of 1871, 42 U.S.C. § 1983 (Section 1983); and Ohio Rev. Code § 4112.02;[1] as well as asserting a claim of promissory estoppel. (Compl., Doc. 1, #35–40). The Court granted Defendants' previous motion to dismiss and dismissed Jones's Complaint without prejudice, providing Jones thirty days in which to seek leave to file an amended complaint. (Op. and Order, Doc. 15). Jones sought such leave and attached a proposed Amended Complaint raising the same state and federal law claims (but without including a

---

[1] Jones described his state-law claims in both his Complaint and proposed Amended Complaint as arising under Ohio Revised Code §§ 4112.02 and/or 4112.99. (Doc. 1, #36–37; Doc. 17-2, #268–69). But this suit is about alleged employment discrimination—refusal to hire—and § 4112.99 does not apply to employment discrimination actions. Ohio Rev. Code § 4112.99(B) ("A person is prohibited from bringing a civil action for employment discrimination under this section."). So the Court considers Jones's claims to have been brought solely under § 4112.02.

specific count for promissory estoppel). (Doc. 17; Proposed Am. Compl., Doc. 17-2, #263–69). Defendants responded, but not by opposing the motion for leave to file. Rather, somewhat confusingly, they moved to dismiss the proposed (but as-yet unfiled) Amended Complaint for failure to state a claim. (Doc. 18). Then furthering the procedural confusion, Jones filed a memorandum that he labeled as supporting his (so far unopposed) motion for leave to file that responded to Defendants' motion to dismiss. (Doc. 20). Jones has further sought leave to file additional materials, (Doc. 22), and both Jones and Defendants have filed documents they label "replies." (Docs. 21, 24).

Such procedural mishaps notwithstanding, the key question before the Court—and the question both parties have briefed—is whether Jones's proposed Amended Complaint states a legally viable claim. For the reasons discussed below, the Court concludes it does not. And because Jones's second attempt has failed, the Court **DISMISSES** Jones's Title VII and § 1983 claims **WITH PREJUDICE** and his remaining state-law claims **WITHOUT PREJUDICE**.[2]

### BACKGROUND[3]

The proposed Amended Complaint is a rambling fifty-one-page account that is difficult to follow. (*See generally* Doc. 17-2). In part, that is because Jones provides an

---

[2] In the conclusion of this Opinion and Order, the Court specifies more clearly what that result portends for each of the various outstanding docket entries.

[3] Because this matter comes before the Court on a motion to dismiss for failure to state a claim, the Court must accept the well-pleaded allegations in the Complaint as true. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). But in reporting the background here based on those allegations, the Court reminds the reader that they are just that—allegations.

extensive history of his efforts to join the Cincinnati police department, extending back nearly 20 years, most of which is irrelevant to his current claims. And that is because he does not clearly identify exactly what actions taken in connection with his latest efforts to join the force he contends constitute discrimination. Undoubtedly that is all, at least in part, because Jones is proceeding pro se. Accordingly, the Court will do its level best to parse the proposed Amended Complaint to identify the core of Jones's various claims. The Court acknowledges, though, that this is no easy task.

Boiled down to its essence, Jones seems to allege the following. In 2019, he applied (again) to become a Cincinnati police officer. (*Id.* at #227, 232). He met all the initial prerequisites and received a conditional acceptance into the force, which called for him to begin at the police academy on December 2, 2019. (*Id.* at #233). But when the Ohio Department of Public Safety (ODPS), a state agency that Jones had sued in a separate action, learned Jones had a prior arrest for domestic violence, it denied Jones access to Ohio's Law Enforcement Administrative Data System (LEADS). (*Id.*). Jones acknowledges that access to the LEADS systems is an "essential requirement" for hiring, (*id.* at #225), and that access to the database is "needed to perform an officer's functions," (*id.* at #226), such that officers who lack such access "are eliminated from performing their functions in part," (*id.*).

Perhaps not surprisingly, then, given ODPS's refusal to provide Jones access to LEADS, the Cincinnati Police Department determined Jones could not serve as a police officer. (*See id.* at #233). So on November 14, 2019, the Department withdrew Jones's conditional offer. (*Id.* at #234, 266; Doc. 17-3, #296). Jones sought review of

3

this decision by the City of Cincinnati and its Board of Education Civil Service Commission. (Doc. 17-2, #233). But after a hearing on November 21, 2019, the Commission denied Jones's request to be placed back in the soon-to-start recruit class. (*Id.*; Doc. 17-3, #287).

Jones, who is Black, believes Cincinnati and its agents withdrew his offer of employment because of his race. (Doc. 17-2, #224–26). He specifically claims that his domestic violence arrest should not have disqualified him from employment (either because it should not have disqualified him from LEADS access or because the City should have overlooked his inability to have such access—the Complaint is unclear). (*Id.* at #236–38). And he also claims that Cincinnati discriminatorily refused to represent him during the November 21, 2019, hearing in front of the City's Civil Service Commission on his request for reinstatement following his LEADS disqualification. (*Id.* at #227, 240–41, 248–49). That said, he does not allege that the Civil Service Commission had any authority to grant him access to LEADS or to waive the requirement that police officer candidates have such access.

Separately, Jones also alleges that "[t]he city and police department was [sic] obliged to initiate the appeal outlined in LEADS Security Policy 5.12" on his behalf and failed to do so. (*Id.* at #241). While Jones does not allege what "LEADS Security Policy 5.12" actually is, it appears to be a way to appeal to ODPS a denial of LEADS access.

Jones further alleges that a white recruit ultimately took his spot in the police force. (*Id.* at #242). And in terms of similarly situated persons from outside the

4

protected class who received different treatment, Jones points to white recruits who were admitted to the force with help from city personnel despite medical and psychological issues. (*Id.* at #240–41). He does not allege, though, that ODPS had denied these recruits access to LEADS. On the LEADS-access front, he instead points to white active-duty police officers who remained on the force after similar arrests for domestic violence—the type of arrest that caused him not to receive LEADS access. (*Id.* at #243–45). He alleges that there is some kind of "vouching" system that applies to officers once hired, in which ODPS will not terminate those previously provided LEADS access if a superior officer "vouches" for the arrested officer. (*Id.* at #238–39). It is not clear, but it may also be that he claims that the City should have sought to use this "vouching" system to intercede with ODPS on his behalf. (*Id.*). More generally, though, based on the entirety of his allegations, Jones claims there is "a higher standard … placed upon the Black community to be hired" by the City. (*Id.* at #247).

Following the City's withdrawal of his offer, Jones lodged multiple charges of discrimination with both the Ohio Civil Rights Commission (OCRC) and the federal Equal Employment Opportunities Commission (EEOC). (*See* Doc. 17-1, #222; Doc. 17-2, #233–34, 253). Eventually, Jones received a letter from the EEOC in connection with one of his charges informing him of his right to sue, dated September 21, 2022. That is the right-to-sue (RTS) letter that he attached to his proposed Amended Complaint. (Doc. 17-1, #222).

Although he does not mention it in his proposed Amended Complaint, Defendants note that on November 2, 2020, the EEOC had issued Jones a prior RTS letter that was likewise based on a claim that the City had discriminated against him when rescinding its offer of a police officer position. (*See* Doc. 8-1, #160). While this document is not attached to the proposed Amended Complaint, it is a public record of which the Court can take judicial notice. *See Kovac v. Super. Dairy, Inc.*, 930 F. Supp. 2d 857, 862–63 (N.D. Ohio 2013) ("EEOC charges and related documents, including right to sue letters, are public records of which the Court may take judicial notice in ruling on a motion to dismiss without having to convert the motion into one for summary judgment."). So the Court also notices the "fact" of this earlier RTS letter in considering Defendants' Motion to Dismiss (Doc. 18).

On September 15, 2022, about a week before Jones received the more recent of the two RTS letters described above, Jones filed the original Complaint in this action naming the City of Cincinnati and its employees Lauren Creditt Mai, Sheila Bond, and Bruce Ross (Employee Defendants), all in their official and individual capacities. (Doc. 1, #1–2). Jones pursued five causes of action: (1) a Title VII claim for racial discrimination in hiring asserted against Cincinnati; (2) a § 1983 claim predicated on an alleged violation of the Equal Protection Clause brought against Employee Defendants; (3) a claim under Ohio Revised Code § 4112.02 for racial discrimination in hiring brought against Cincinnati; (4) a claim under Ohio Revised Code § 4112.02(J) for aiding and abetting unlawful discrimination brought against Employee Defendants; and (5) a promissory estoppel claim. (*Id.* at #35–40). In support

of those claims, Jones attached a third, different RTS letter from the EEOC, dated July 7, 2022, that he asserted authorized his Title VII claim. (*Id.* at #44).

Defendants moved to dismiss the original Complaint under Federal Rule of Civil Procedure 12(b)(6). (Doc. 8). Among other defenses, Defendants argued that Jones attached the wrong RTS letter. (*Id.* at #142). The RTS letter he attached to his original Complaint involved a discrimination charge he had filed *against ODPS*, not against the Defendants here. (*Id.*). Defendants argued that the applicable RTS letter was instead the November 2, 2020, RTS letter discussed above. And that meant that Jones did not timely file his Title VII claim. (*Id.* at #147–49). They also argued that Jones's § 1983 claim failed on statute of limitations grounds. (*Id.* at #150).

The Court granted Defendants' motion to dismiss and dismissed Jones's Complaint without prejudice. (Doc. 15, #202). The Court did so because (1) Jones did not show he had complied with Title VII's prefiling requirements as the letter he attached did not correspond to his claims against Defendants, (*id.* at #205–07); (2) his § 1983 claim was untimely, (*id.* at #207–09); and (3) the Court declined to exercise supplemental jurisdiction over Jones's state-law claims after dismissing his federal law claims, (*id.* at #209–10). But it granted Jones thirty days to seek leave to file an amended complaint to cure the deficiencies identified in his first Complaint, if he could. (*Id.* at #210–11).

Jones accepted the Court's invitation. First, he moved for leave to file three exhibits. (Doc. 16). The Court denied the motion for leave to file additional materials

as moot but wrote that "Jones may attach the materials as exhibits to his proposed amended complaint, if he so chooses." (4/24/23 Not. Order).

Jones then moved for leave to file an amended complaint, to which he attached the proposed Amended Complaint. (Doc. 17). His proposed Amended Complaint reasserts four of the same counts as his original complaint: (1) a Title VII claim for racial discrimination in hiring brought against Cincinnati; (2) a § 1983 claim for a violation of the Equal Protection Clause brought against Employee Defendants; (3) a claim under Ohio Revised Code § 4112.02 for racial discrimination in hiring brought against Cincinnati; and (4) a claim under Ohio Revised Code § 4112.02(J) for aiding and abetting unlawful discrimination brought against Employee Defendants. (Doc. 17-2, #267–69). He also argues that he is entitled to relief on promissory estoppel grounds, (*id.* at #263–67), though the proposed Amended Complaint does not include a promissory estoppel count. And this time in support of his Title VII claim, he attached the September 21, 2022, RTS letter. (Doc. 17-1). However, his motion and proposed Amended Complaint do not mention, let alone discuss, the earlier November 2, 2020, RTS letter on which the Defendants had relied in seeking dismissal of his original Complaint.

While the Court had not granted (and still has not granted) Jones leave to file that proposed Amended Complaint, Defendants nonetheless responded by moving to dismiss it under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. (Doc. 18). As to his federal law claims, they argue that (1) Jones's Title VII claim is untimely because it consists of allegations that were part of his 2020 EEOC charge

8

and he did not timely bring suit—waiting until 2022, (*id.* at #376–78); (2) the Title VII claims fails on the merits because the allegations "consist of little more than recitations of legal buzz words" and Jones pleads them with insufficient factual support, (*id.* at #378–79); (3) Jones's equal protection claim under § 1983 is time-barred, (*id.* at #379–80); (4) the Amended Complaint "does not make specific allegations of unconstitutional conduct" against Employee Defendants in their individual capacities, (*id.* at #380–81); and (5) Employee Defendants are entitled to qualified immunity, (*id.* at #381–82). They also argue that his claims for both unlawful discriminatory practices and aiding and abetting such practices lack the factual support necessary to meet the applicable pleading standards, (*id.* at #382–83); all Defendants are entitled to statutory immunity under Ohio law for the state-law claims, (*id.* at #384–85); and promissory estoppel does not apply in the exercise of a governmental function, (*id.* at #385).

Jones responded. (Doc. 20). Although he labeled that filing a response in support of his motion for leave to amend, he responds to the arguments Defendants made in their Motion to Dismiss. As is most relevant, he argues that (1) Employee Defendants are not entitled to immunity because they acted "with malicious purpose, in bad faith, or wantonly or recklessly," (*id.* at #399–401 (citing Ohio Rev. Code § 2744.03(A)(6)(b))); and (2) the Court should excuse his failure to comply with the relevant statutes of limitations, (*id.* #405–07).

Next, Defendants replied in support of dismissal. (Doc. 21). For his part, Jones filed two more motions: one seeking leave to file additional materials, (Doc. 22), and

one seeking leave to file an additional reply addressing Defendants' argument that Jones's § 1983 claim was time-barred, (Doc. 23). He then also went ahead and filed that proposed additional reply anyway, in which filing he asserted that the § 1983 statute of limitations is four years under Ohio Revised Code § 2305.09(D). (Doc. 24, #455).

Putting aside the procedural miscues, the central question now before the Court is whether the proposed Amended Complaint states any legally viable claims.

## LEGAL STANDARD

"When a motion to dismiss is granted[,] … the usual practice is to grant plaintiffs leave to amend the complaint." *PR Diamonds, Inc. v. Chandler*, 364 F.3d 671, 698 (6th Cir. 2004), *abrogated in part on other grounds by Frank v. Dana Corp.*, 646 F.3d 954, 961 (6th Cir. 2011). The Court did so here. But when the plaintiff tenders a proposed amended complaint, the court will deny leave to file if, among other reasons, the amendment would be futile. *Id.*; *Dubuc v. Green Oak Twp.*, 312 F.3d 736, 752 (6th Cir. 2002). The touchstone for assessing futility is whether the proposed amendment can survive a Rule 12(b)(6) motion to dismiss. *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420–21 (6th Cir. 2000).

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must allege "sufficient factual matter … to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). While a "plausible" claim for relief does not require a showing of probable liability, it requires more than "a sheer possibility that a defendant has acted unlawfully." *Id.* The complaint must allege

10

sufficient facts to allow the Court to "draw the reasonable inference that the defendant is liable." *Id.* And a plaintiff must provide a "short and plain statement of the claim showing that the pleader is entitled to relief." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012) (quoting Fed. R. Civ. P. 8(a)(2)).

To meet this pleading standard, a complaint must contain "either direct or inferential allegations respecting all material elements to sustain recovery under a viable legal theory." *Terry v. Tyson Farms, Inc.*, 604 F.3d 272, 275–76 (6th Cir. 2010) (citation omitted). "Conclusory allegations or legal conclusions masquerading as factual allegations will not suffice." *Id.* at 276 (cleaned up). In short, an action will be dismissed where "there is no law to support the claims made" or "the facts alleged are insufficient to state a claim." *Stew Farm, Ltd. v. Nat. Res. Conservation Serv.*, 967 F. Supp. 2d 1164, 1169 (S.D. Ohio 2013).

At the motion-to-dismiss stage, the Court accepts the facts of the complaint as true. *Iqbal*, 556 U.S. at 678. But that does not mean the Court must take everything plaintiffs allege at face value, no matter how unsupported. The Court may disregard "naked assertions" of fact or "formulaic recitations of the elements of a cause of action." *Id.* (cleaned up). Finally, the Court has limited scope to consider certain materials outside the pleadings—such as matters of public record. *Elec. Merch. Sys. LLC v. Gaal*, 58 F.4th 877, 883 (6th Cir. 2023) ("Generally, in considering a motion to dismiss, the district court is confined to considering only the pleadings … . However, the court may, in undertaking a 12(b)(6) analysis, take judicial notice of

matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint." (cleaned up)).

## LAW AND ANALYSIS

The Court begins by discussing the proposed Amended Complaint and the arguments that Defendants level against it. It then concludes by resolving some ancillary matters—specifically Jones's two most recent motions.

**A.    Jones's Proposed Amended Complaint Cannot Survive a Motion to Dismiss Under Rule 12(b)(6).**

As noted above, from surface appearances, the parties have not exactly joined issue—Jones filed a Motion for Leave to Amend, while Defendants move to dismiss the (unfiled) proposed Amended Complaint. But both motions turn on a central question—whether the proposed Amended Complaint states a claim for relief. The Court begins its analysis of that question with the two federal claims (Title VII and § 1983; in that order) and then turns to the state claims.

### 1.    The Title VII Claim

Defendants argue that Jones's Title VII claim is untimely because it consists of allegations that were part of his 2020 EEOC charge, yet he did not sue until 2022. (Doc. 18, #376–78). And they also argue that Jones fails to state a valid Title VII claim in any event. (*Id.* at #378–79). As explained below, the Court agrees with the first argument as to most of Jones's allegations and agrees with the second argument for all of Jones's Title VII claim.

Start with the timeliness issue. Before bringing a Title VII claim, a plaintiff must normally exhaust administrative remedies. 42 U.S.C. § 2000e-5(f); *Williams v.*

*Nw. Airlines, Inc.*, 53 F. App'x 350, 351 (6th Cir. 2002). To do so, a plaintiff files an administrative charge with the EEOC or another proper state or local agency. *Williams*, 53 F. App'x at 351–52. If the agency dismisses the claim and issues an RTS letter, the plaintiff must then sue within ninety days. *Id.* at 352 (citing 42 U.S.C. § 2000e-5(f)(1)). And to demonstrate compliance with this scheme, a plaintiff's complaint should typically include allegations related to exhaustion and an attached copy of the RTS letter. *See, e.g.*, *Dickerson v. Assocs. Home Equity*, 13 F. App'x 323, 324 (6th Cir. 2001). Indeed, the Sixth Circuit has suggested that, to survive a motion to dismiss, the complaint must "conclusively show that [the plaintiff] exhausted her administrative remedies prior to filing her complaint in federal court." *Tucker v. Victor Gelb, Inc.*, 194 F.3d 1314, 1999 WL 801544, at *1 (6th Cir. Sept. 28, 1999) (Table) (citing *Brown v. Gen. Serv. Admin.*, 425 U.S. 820, 832 (1976)).

That said, these prefiling requirements are not "jurisdictional," but conditions precedent to suing, and a plaintiff may benefit from defenses such as waiver, estoppel, or equitable tolling in limited circumstances. *Williams*, 53 F. App'x at 352; *Rivers v. Barberton Bd. of Educ.*, 143 F.3d 1029, 1031–32 (6th Cir. 1998) (stating that all § 2000e–5(f)(1) filing prerequisites are subject to these defenses). And a plaintiff may cure the defect of not initially providing an RTS letter by subsequently providing that letter if the initial defect did not prejudice Defendants. *Chandler v. Vulcan Materials Co.*, 81 F. App'x 538, 541 (6th Cir. 2003) (holding that district court erred by denying the plaintiffs' motion for reconsideration when the plaintiffs did not file EEOC charges until after bringing the case and failed to introduce the RTS letters into the

13

record before the court granted summary judgment based on the lack of such letters but introduced the letters before moving for reconsideration). But another rule also applies—"Title VII does not allow a plaintiff who misses the 90–day window [to sue after receiving an RTS letter] to resurrect the same claims by including them in a new EEOC charge, restarting the process and resetting the limitations clock." *Hollimon v. Shelby Cnty. Gov't*, 325 F. App'x 406, 409 (6th Cir. 2009). In other words, plaintiffs may argue that prefiling requirements should be waived, tolled, or subject to estoppel, but they may not simply ignore those requirements by filing a new EEOC charge based on the same conduct in an attempt to get two bites at the apple.

Here, the Court concludes that Jones is, at least in large part, improperly attempting to resurrect time-barred claims. In Jones's 2020 EEOC charges, of which the Court can take judicial notice as a matter of public record, *see Kovac*, 930 F. Supp. 2d at 862–63, he asserted the following:

> I. I am African American. On November 21, 2019, I had an appeal hearing with Law Enforcement Administrative Data System (LEADS) and Cincinnati Police Department (CPD) did not represent me or give me the option to have representation. CPD represented a Caucasian recruit, who was appealing [a] decision made by LEADS. CPD then rescinded my job offer and told me that they already had my replacement.
>
> II. Management is responsible for the above discriminatory actions.
>
> III. I believe I have been discriminated against because of Race, in violation of Title VII of the Civil Rights Act of 1964, as amended.

(Doc. 8-1, #162). That sounds a lot like a condensed version of Jones's allegations in his proposed Amended Complaint. True, there are some small differences. For example, in his proposed Amended Complaint, Jones says that the City refused to

14

represent him at a hearing before the Civil Service Commission, (Doc. 17-2, #233), while the 2020 charges say it refused to do so in a "hearing with LEADS."[4] But Jones is presumably referring to the same hearing in two different ways because both allegations say that the hearing at which the City allegedly discriminated against him occurred on November 21, 2019. (*Compare id.* with Doc. 8-1, #162). And the key factual allegations are otherwise largely the same. In both, Jones alleges that he received an offer to join the Cincinnati Police Department; the City rescinded his offer; it refused to represent him at an appeal hearing of some sort, despite representing a white recruit at that same hearing; and it replaced him with a white candidate after his bid for reinstatement failed.

That creates a problem for Jones, as the EEOC issued an RTS letter on those charges on November 2, 2020. (*See* Doc. 8-1, #160 (digital signature dated November 2, 2020)). So Jones had until February 1, 2021—90 days from November 2, 2020, factoring in that January 31 was a Sunday—to sue based on those charges. *(See id.* ("Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice;** or your right to sue based on this charge will be lost.") (emphasis in original)); *Williams*, 53 F. App'x at 352. He did not sue, however, until September 15, 2022. (Doc. 1). Accordingly, to the extent that the proposed Amended Complaint is based

---

[4] The Court notes that Defendants specifically assert that the hearing was before the Civil Service Commission, not the LEADS Administrator. (Doc. 18, #374 ("On November 21, 2019, Jones appeared before the City of Cincinnati and Board of Education Civil Service Commission ('Commission') to appeal his removal from the police recruit process. The hearing on this date was ***not*** an appeal to the Ohio State Highway Patrol or the LEADS Administrator.")). For these purposes, the relevant point is that, despite the different labels he uses, Jones is referring to the same hearing in both his 2020 EEOC charges and the proposed Amended Complaint.

15

on factual allegations covered by the 2020 RTS Letter, the Court concludes that they are time barred. *Hollimon*, 325 F. App'x at 409.

That covers all of the substantive allegations in the proposed Amended Complaint with one possible exception. Specifically, the one perhaps non-duplicative substantive allegation from the proposed Amended Complaint is Jones's allegation that "[t]he city and police department was [sic] obliged to initiate the appeal outlined in LEADS Security Policy 5.12." (Doc. 17-2, #241). This allegation is not a model of clarity, and it is not clear whether it constitutes a new allegation not covered by the 2020 EEOC allegations. But one way to read it is to say the City was obligated to initiate some kind of external appeal to ODPS on Jones's behalf regarding the LEADS denial. Thus understood, this could perhaps be a new allegation. And, of course, at the motion to dismiss stage, "we construe the complaint in the light most favorable to the plaintiff." *Baltrusaitis v. Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am.*, 86 F.4th 1168, 1174 (6th Cir. 2023) (cleaned up). So that is how the Court construes it here.

But that leads to a different timeliness issue. Ohio is a "deferral state." And in a "deferral state," a plaintiff must present his federal discrimination charges to the EEOC or OCRC within 300 days of the discriminatory conduct. *See Amini v. Oberlin Coll.*, 259 F.3d 493, 498 (6th Cir. 2001). Here, the alleged refusal to invoke the appeals process under Section 5.12, about which Jones now complains in his proposed Amended Complaint, must have occurred *before* the decision to withdraw his offer. That is, reading the proposed Amended Complaint most favorably to Jones, he is

16

saying that, instead of withdrawing the offer due to the LEADS denial, the City instead should have appealed to ODPS to seek to reinstate Jones's access to that database. And thus understood the discriminatory failure to appeal occurred on or before November 14, 2019.

The RTS letter from September 21, 2022 (the one on which Jones seeks to rely in support of his proposed Amended Complaint), pertains to charge 22A-2022-000458. (Doc. 17-1). The parties do not include that charging document, so the Court cannot confirm that the LEADS failure-to-appeal claim is even in it. But documents that the EEOC provided to the City in connection with that charge show it was filed on October 18, 2021. (Doc. 21-1, #433). That is well more than 300 days after the allegedly discriminatory conduct. Accordingly, even giving Jones the benefit of the doubt, and assuming that this charge included the City's failure to appeal with ODPS, the charge was untimely when filed, meaning it is time-barred and fails as a matter of law now. *Jones v. City of Franklin*, 309 F. App'x 938, 944 (6th Cir. 2009) ("Because the plaintiffs' EEOC charges were filed more than 300 days after each of these alleged acts, the claims are barred under Title VII.").

Separately, even if the Court were inclined to overlook the various timeliness problems, the Title VII claims fails for a second reason. Specifically, Defendants are correct that Jones has not pleaded the facts needed to allege a plausible claim for race discrimination. (Doc. 18, #378–79). True, the proposed Amended Complaint need not present "detailed factual allegations" for his race discrimination claim to be plausible. *Keys*, 684 F.3d at 610 (citation omitted). But it must "allege sufficient factual content

17

from which a court, informed by its judicial experience and common sense, could draw the reasonable inference, that [Defendants] discriminated against [Jones] with respect to [his] compensation, terms, conditions, or privileges of employment, *because of* [his] race." *Id.* (cleaned up).

Jones has failed to clear that hurdle. Although he points to several white recruits allegedly given more favorable resolutions than him, (Doc. 17-2, #240), he never alleges that they matriculated at the police academy despite being denied LEADS access. And a lack of LEADS access—which is the reason the City proffers as to why it withdrew Jones's conditional employment offer, (Doc. 17-3, #322)—is a neutral, legally significant difference between Jones and those other applicants he names. *See Ayers-Jennings v. Fred's Inc.*, 461 F App'x 472, 478–80 (6th Cir. 2012). After all, as the Court noted earlier, Jones himself admits that LEADS access is essential for a Cincinnati police officer. (Doc. 17-2, #225–26). So any favorable resolution of those other applicants' challenges, which did not include an ODPS determination denying them access to LEADS, does not allow the Court to "draw the reasonable inference" that Defendants discriminated against Jones because of his race. *Keys*, 684 F.3d at 610 (citation omitted).

As for the LEADS-access issue, Jones never alleges that the City knew that ODPS had a history of denying LEADS access in a discriminatory fashion (or even that ODPS has such a history) or that the City initiated appeals to ODPS on behalf of white applicants who were denied LEADS access but refused to do so for Jones. Nor does he allege that a more favorable resolution at the November 21, 2019, hearing

18

at which the City did not represent him—which both the proposed Amended Complaint and the Motion to Dismiss describe as being in front of the Civil Service Commission—would have led to his receiving LEADS access. Nor has he alleged any facts suggesting that the City should have reinstated him because there was a valid reason to overlook his lack of LEADS access. So he has not alleged facts that allow the Court to draw the reasonable inference that the events surrounding Jones's denial of access and the Civil Service Commission hearing and its results were discriminatory, either. Accordingly, Jones's Title VII claim fails to plausibly allege racial discrimination.

Thus, both on timeliness grounds and on the merits, the Court concludes that Jones has failed to state a viable Title VII claim in his proposed Amended Complaint.

### 2.    The § 1983 Claim.

The Court next turns to Jones's § 1983 claim. Defendants also argue that this claim is time-barred. (Doc. 18, #379–80). The Court again agrees.

The statute of limitations is an affirmative defense. *Snyder-Hill v. Ohio State Univ.*, 48 F.4th 686, 698 (6th Cir. 2022). So as a general matter it is not an appropriate basis for dismissal. *Id.* That said, the Sixth Circuit has held that there are limited occasions where such a dismissal is appropriate—specifically, "if the allegations in the complaint affirmatively show that the claim is time-barred." *Id.* (cleaned up). To take advantage of the rule, "it is the defendant's burden to show that the statute of limitations has run." *Id.* In determining whether the defendant has met that burden, the Court generally must consider: (i) the applicable statute of limitations period, (ii)

19

when the action accrued (and thus set that period in motion), and (iii) whether any tolling period exists. *See Hollis v. Erdos*, 480 F. Supp. 3d 823, 829–30 (S.D. Ohio 2020).

Congress did not include a statute of limitations in the text of 42 U.S.C. § 1983. Rather, state law provides the applicable period. *Sevier v. Turner*, 742 F.2d 262, 272 (6th Cir. 1984). And in Ohio—where all the relevant events occurred—the applicable period is two years. *Basista Holdings, LLC v. Ellsworth Twp.*, 710 F. App'x 688, 691 (6th Cir. 2017). On the other hand, federal law controls the time at which a § 1983 action accrues. *Sevier*, 742 F.2d at 272. And that accrual occurs "when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Id.* at 273.

Jones alleges Defendants violated his right to equal protection under the laws. (Doc. 17-2, #267–68). Following an appeal hearing before Cincinnati's Civil Service Commission on November 21, 2019, the Commission denied Jones's request for reinstatement and affirmed the Police Department's rescission of his conditional employment offer. (*Id.* at #233; Doc. 17-3, #322). And in Jones's telling, Defendants (as agents for Cincinnati) purportedly discriminated against him at that hearing (although he doesn't say exactly how). (Doc. 17, #268). Thus, his alleged injury—the discriminatory rescission of his offer of employment—occurred on that date.

Jones likely knew or ought to have known of his "injury" soon after his offer was rescinded. But even if he did not immediately discover the allegedly discriminatory hiring practices, he certainly knew of his injury no later than January 16, 2020. On that day, he filed a Charge of Discrimination containing these same

20

allegations against the Cincinnati Police Department with both the EEOC and the Ohio Civil Rights Commission (OCRC). (Doc. 17-3, #321, 341). Yet he did not file his original Complaint here until September 15, 2022. (*See* Doc. 1). Accordingly, Jones filed his § 1983 claim outside the two-year limitations period. So his claim is time-barred unless he is entitled to equitable tolling.

Jones claims he is, but the Court disagrees. Ohio law determines whether Jones is entitled to equitable tolling of his § 1983 claim. *Ali v. Simmons*, No. 21-1829, 2023 WL 4085758, at *4 (6th Cir. Apr. 4, 2023) ("[Plaintiff] also argues that the statute of limitations should be equitably tolled, citing federal equitable-tolling principles. 'Having borrowed the state's statute of limitations for the § 1983 claim,' however, we apply the state's tolling rules 'as long as the result is not inconsistent with federal law or policy.'" (quoting *Johnson v. Memphis Light Gas & Water Div.*, 777 F.3d 838, 845 (6th Cir. 2015)). In Ohio, "equitable tolling is only available in compelling cases which justify a departure from established procedure." *Roach v. Vapor Station Columbus, Inc.*, 2022-Ohio-2106, ¶ 8 (10th Dist.) (cleaned up). More specifically, "[a] litigant seeking equitable tolling must demonstrate he diligently pursued his rights, but some extraordinary circumstance … prevented timely action. The doctrine is generally limited to circumstances in which a litigant is intentionally misled or tricked into missing the filing deadline." *Id.* (citation omitted).

So how does that standard play out here? Jones alleges that the EEOC dragged its feet in assessing his case, which precluded him from suing. (Doc. 20, #405–07). But a plaintiff need not procure an RTS letter from the EEOC to bring a § 1983

claim—only to bring a Title VII claim. And because a § 1983 claim "is separate from and independent of Title VII, the statute of limitations on a … Section 1983 claim is not tolled by the pendency of administrative action on a Title VII claim." *Carter v. District of Columbia.*, 14 F. Supp. 2d 97, 102 (D.D.C. 1998) (cleaned up). Further, even if Jones is correct that the EEOC dragged its feet, he has not pleaded any factual allegations suggesting that anyone "intentionally misled or tricked [him] into missing the filing deadline." *Roach*, 2022-Ohio-2106, at ¶ 8; *see also Carter*, 14 F. Supp. 2d at 102 ("Defendant[s] [] had no obligation to inform plaintiff of [his] rights regarding a … Section 1983 claim. It was plaintiff's responsibility to become aware of [his] right to bring [a § 1983] claim[] within the [] limitations period[.]"). And pro se status does not, by itself, entitle a plaintiff to equitable tolling. *See Lomax v. Sears, Roebuck & Co.*, 238 F.3d 422, 2000 WL 1888715, at *6 (6th Cir. Dec. 19, 2000) (Table) ("[A]ll [Title VII] claimants, including pro se claimants, have a responsibility to meet the requirements of the law[.]"); *see also Rose v. Dole*, 945 F.2d 1331, 1335 (6th Cir. 1991) ("It is well-settled that ignorance of the law alone is not sufficient to warrant equitable tolling."). So the Court concludes that Jones is not entitled to equitable tolling and dismisses his § 1983 claim as time barred.

Jones resists this conclusion by arguing that "[t]he [Supreme] Court's holding in *Lewis* [*v. City of Chicago*, 560 U.S. 205 (2010)] effectively extends the statute of limitations indefinitely for facial-neutral [sic] employment policies that remain in use." (Doc. 20, #407). But *Lewis* does not help Jones. In that case, Chicago used test scores to sort firefighter applicants into three groups: "well qualified" applicants (who

22

received offers), "qualified applicants" (who were treated as alternates), and those who did not receive a passing score. *Id.* at 208–09. It then continued to use that same pool of applicants—thus sorted—for successive rounds of hiring. *Id.* at 209. The use of the test scores to do the initial sorting had a disparate impact on Black applicants—a fact to which Chicago stipulated. *Id.* at 209–10. So a class of 6,000 Black applicants who scored in the "qualified" range and did not receive employment offers was certified in the underlying discrimination suit against Chicago. *Id.* at 209. In response to a statute of limitations argument, the Court held that plaintiffs could bring suit, even though the initial sorting occurred outside the limitations period. *Id.* at 211–12. But that was because subsequent hiring rounds—for which plaintiffs were not selected due to their initial test scores—had occurred *within* the limitations period. *Id.* And the Court specifically relied on *that* conduct—the non-selection that occurred within the limitations period—as the basis for allowing the suit to go forward. *Id.* Here, by contrast, Jones is not alleging any new adverse determinations based on a previous application of a discriminatory policy. Rather, his claims all stem from Defendants' original rescission of his offer to join the Police Department, which occurred outside the limitations period. So *Lewis* does not alter the Court's conclusion that Jones's § 1983 claim is outside the statute of limitations. Accordingly, the Court dismisses it as untimely.

### 3.    The State-Law Claims.

That leaves Jones's state-law claims: unlawful discriminatory practices, aiding and abetting unlawful discrimination, and promissory estoppel. Jones says the Court

has (and should exercise) supplemental jurisdiction over those claims under 28 U.S.C. § 1367. (Doc. 17-2, #229). But having dismissed Jones's federal claims, the Court declines to do so.

A federal court may exercise supplemental jurisdiction over state-law claims that constitute part of the same case or controversy as a claim over which the court has original jurisdiction. 28 U.S.C. § 1367. But a court also may decline to continue exercising such supplemental jurisdiction when "the district court has dismissed all claims over which it has original jurisdiction." *Id.* § 1367(c)(3). "In determining whether to retain jurisdiction over state-law claims, a district court should consider and weigh several factors, including the 'values of judicial economy, convenience, fairness, and comity.'" *Gamel v. City of Cincinnati*, 625 F.3d 949, 951 (6th Cir. 2010) (quoting *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)). "When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims." *Id.* at 952 (quoting *Musson Theatrical, Inc. v. Fed. Exp. Corp.*, 89 F.3d 1244, 1254–1255 (6th Cir. 1996)).

Given this legal landscape, the Court declines to maintain supplemental jurisdiction over Jones's three remaining state-law claims. The Court has "dismissed [the two federal claims over which it had original jurisdiction] before trial." *Id.* And it sees no benefits to judicial economy, convenience, or fairness from adjudicating the remaining state-law claims, so it declines "needlessly [to] decid[e] state law issues." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993).

**B.** **Jones's Motions Filed after the Motion-to-Dismiss Briefing Are Improper.**

That leaves only Jones's Motion for Leave to Add Additional Materials, (Doc. 22), and his motion seeking to file an additional reply, (Doc. 23). Both are improper. Begin with the Motion for Leave to Add Additional Materials. That motion seeks to introduce three exhibits purportedly supporting Jones's argument that he is entitled to equitable tolling. (Doc. 22, #439–41). But those (unauthenticated) exhibits are not part of the pleadings, nor are they within any of the categories appropriate for judicial notice, so the Court may not consider them at this stage. *Elec. Merch. Sys.*, 58 F.4th at 883. Accordingly, the Court denies Jones's Motion for Leave to Add Additional Materials.

Jones's Motion for Leave to File Reply is similarly improper. Jones has no right to file an additional reply without leave of the Court. S.D. Ohio Civ. R. 7.2(a)(2). So he moved for leave to file additional briefing supporting the proposition that the applicable statute of limitations is four years, rather than two. (Doc. 23, #452). There are two problems with this motion. First, to the degree that Jones's reiterated equitable tolling argument, (Doc. 24, #459), is inviting the Court to consider the materials that the Court already determined it could not consider as part of Jones's Motion for Leave to Add Additional Materials, the Court once again declines to consider materials outside the pleadings. Second, inasmuch as the Court may consider the new law Jones cites in his proposed reply, established case law clearly contradicts Jones's argument. The Ohio Supreme Court has held that the applicable statute of limitations is two years. *Nadra v. Mbah*, 893 N.E.2d 829, 833–35 (Ohio

25

2008) (rejecting the argument that Ohio Revised Code § 2305.09's four-year statute of limitations applies to § 1983 actions and holding that § 2305.10's two-year statute of limitations applies). And the Sixth Circuit has consistently held the same. *E.g.*, *Basista Holdings, LLC*, 710 F. App'x at 691 ("In Ohio, causes of action premised upon 42 U.S.C. § 1983 are subject to a two-year statute of limitations."). Accordingly, the Court denies Jones's motion and disregards Jones's already-docketed filing. But it determines that striking the filing is not necessary. *Shanghai Weston Trading Co. v. Tedia Co.*, No. 1:23-cv-117, 2023 WL 8787235, at *3 n.4 (S.D. Ohio Dec. 19, 2023).

## CONCLUSION

For the reasons discussed above, the Court **DENIES** Jones's Motion for Leave to File Amended Complaint (Doc. 17). Because that means Jones's Amended Complaint will not be filed, the Court **DENIES** Defendants' Motion to Dismiss Plaintiff's Amended Complaint (Doc. 18), although the Court notes that the Defendants essentially achieved the outcome they sought through that motion. The Court also **DENIES** both Jones's Motion for Leave to Add Additional Materials (Doc. 22) and his Motion for Leave to File Reply (Doc. 23). And, because this is Jones's second failed attempt to raise viable claims in this cause of action, the Court **DISMISSES** Jones's Title VII and § 1983 claims **WITH PREJUDICE** and his remaining state-law claims **WITHOUT PREJUDICE**. The Court **DIRECTS** the Clerk to enter judgment and to **TERMINATE** this case on its docket.

**SO ORDERED.**

February 21, 2024
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**